Filed 7/29/25  In re E.F. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re E.F., a Person Coming Under the Juvenile Court Law. | A171930 |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. J.B., Defendant and Appellant. | (Alameda County Super. Ct. No. JD-038176-01) |

J.B. (mother) appeals from the juvenile court order finding jurisdiction over her minor child, E.F., under Welfare and Institutions Code section 300, subdivision (b)(1)[1] and the court's dispositional order.[2]  Because the juvenile court has since terminated jurisdiction over the dependency proceeding, we can provide no effective relief to mother and dismiss her appeal as moot.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

[2] E.F.'s father, D.F. (father), was also involved in the juvenile court proceedings, but only mother has appealed.

1

# FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise indicated, all dates refer to 2024.

*Dependency Proceedings*

On September 15, the Alameda County Social Services Agency (the Agency) received a report that on September 14, father engaged in physical violence toward mother while she was holding the child, then five months old.

In interviews with the Agency that week, mother reported the following. Mother had been in a relationship with father since March 2023. On the night of the incident, mother and father were sitting on the couch at home drinking tequila, having each taken about three to four shots, while the child was asleep on the couch. After mother brought up a conversation about father's prior infidelity, and while the child was on mother's chest as she sat on the couch, father began yelling and screaming, threw glass at the wall, pulled mother's hair, and choked her by putting his hands around her neck (although she was still able to breathe). Father then fell asleep in front of mother and, not wanting to wake him up for fear of causing another scene, she texted her brother asking him to call the police. Police arrived at the house and arrested father, who, unbeknownst to mother, had a gun on him.

Mother further reported this was not the first time father had acted violently toward her; there had been four previous times father had " 'put hands on [her],' " which involved choking her, hitting, and breaking and throwing things around her. During one of those instances that occurred two weeks prior, father pushed mother onto the couch where the child was sleeping. Mother had not called the police those prior times because of " 'hope.' " Mother developed a safety plan with the Agency and the maternal grandmother to allow the child to safely stay in mother's care and to avoid contact with father.

2

On September 20, the Agency filed a juvenile dependency petition pursuant to section 300, subdivision (b)(1) (failure to protect) regarding the child. The petition contained two allegations: father engaged in physical violence toward mother while she was holding the child, thereby placing the child at risk of serious physical harm; and mother had been a victim of domestic violence on four previous occasions while the child was present but did not call the police or take measures to protect herself or the child, exposing the child to additional violence.

A detention report containing the above information was filed on September 23, the day of the detention hearing. At the hearing, the Agency asked the court to detain the child from father. Mother's counsel indicated mother was no longer in a relationship with father and had moved out of the home where the incident occurred. The juvenile court found a prima facie showing had been made that the child came within section 300, subdivision (b)(1) and found initial removal from the father was warranted based on the allegations described above. The court ordered temporary care, custody, and placement of the child to be vested with the Agency pending disposition.

In its October jurisdiction/disposition report, the Agency recommended the court find the dependency petition true and order formal family maintenance services to mother. Mother stated in an interview that she and the child continued to live with her parents, she had not had any contact with father, and she did not plan to press charges against him. Mother worked part-time and was in school to be an emergency room technician. When asked about her alcohol use, mother stated she did not drink very often since she had become pregnant with the child; as to the night of the September 14 incident, mother indicated she had only one alcoholic drink. She stated alcohol was involved in some of the domestic violence incidents with father.

Also, mother was serving a term of probation from a DUI conviction sustained in October 2023. The attached six-month case plan for mother included completing a drug and alcohol assessment and following recommended treatment (if advised), engaging in drug and alcohol testing (if advised), and engaging in domestic violence counseling.

On December 5, the court held a contested combined jurisdiction and disposition hearing. The court considered the reports described above and admitted them into evidence. Mother provided the sole witness testimony, which generally mirrored the information in the reports previously described. However, mother clarified that the child was present during only one of the four prior incidents of domestic violence. Also, in contrast to her initial interview but consistent with the interview described in the October jurisdiction/disposition report, mother stated that she had just one drink on the night of the incident. Mother wanted the court to grant her full legal and physical custody of the child.

The Agency and the child's counsel requested the court order formal family maintenance services. Mother's counsel argued the petition should be dismissed as mother had been compliant with the Agency and no longer had any contact with father. The juvenile court sustained the dependency petition, declared the child a dependent of the court, removed the child from father's custody, and granted care, custody, control, and conduct of the child to mother. The court ordered mother to participate in all aspects of the case plan and continued the matter for six months for a status review hearing.

On December 12, mother appealed from the jurisdictional findings and dispositional order.

*Postappeal Orders*

The Agency requests this court take judicial notice of orders issued by the juvenile court during the pendency of mother's appeal. We grant the Agency's unopposed request. (Evid. Code, §§ 452, subd. (d), 459, subd. (a); see *In re M.F.* (2022) 74 Cal.App.5th 86, 110 [appellate courts may consider postappeal orders for limited purpose of determining whether appeal is moot].) These orders reflect that, at a six-month review hearing held on May 15, 2025, the juvenile court found the conditions justifying the initial assumption of jurisdiction no longer existed. The court terminated dependency jurisdiction and granted sole legal and physical custody of the child to mother.

## DISCUSSION

On appeal, mother contends that the juvenile court's jurisdictional findings are not supported by substantial evidence; the court erred by failing to dismiss the petition upon disposition; and the dispositional order requiring completion of a drug and alcohol assessment and recommended testing and treatment was an abuse of discretion. The Agency argues the May 15, 2025 order vacating the dependency and dismissing the child's petition renders mother's appeal moot. We conclude mother's appeal is moot, and we decline to exercise our discretion to consider the merits of the appeal.

## I. Mother's Appeal Is Moot

A case becomes moot when events occur that render it impossible for a court to grant effective relief. (*In re D.P.* (2023) 14 Cal.5th 266, 276 (*D.P.*).) "For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*Ibid.*)

" 'As a general rule, an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceedings moot.' " (*In re T.R.* (2024) 107 Cal.App.5th 206, 214.)  However, we do not automatically dismiss the appeal as moot in such circumstances.  (*Ibid.*)  Rather, we must decide on a case-by-case basis whether intervening events make a case moot.  (*D.P.*, *supra*, 14 Cal.5th at p. 276.)  In *D.P.*, the California Supreme Court gave as examples of non-moot challenges to jurisdiction findings cases in which a jurisdiction finding affected parental custody rights, curtailed a parent's contact with his or her child, or " 'resulted in [dispositional] orders which *continue to* adversely affect' a parent."  (*Id.* at pp. 277–278, italics added.)

On the other hand, where a parent fails to identify a "tangible legal or practical consequence of the jurisdictional finding that would be remedied by a favorable decision on appeal," no effective relief can be granted and the appeal is moot.  (*D.P.*, *supra*, 14 Cal.5th at pp. 277–278.)  Critically, *D.P.* expressly stated that "speculative future harm" is insufficient to avoid mootness.  (*Id.* at p. 278.)

Here, the challenges mother seeks to raise on appeal as to the juvenile court's jurisdictional and dispositional orders have been rendered moot by its subsequent order terminating jurisdiction, as there is no ongoing harm that is redressable by a reversal of those orders.  (*D.P.*, *supra*, 14 Cal.5th at p. 276.)  In asserting to the contrary, mother raises two points as to why the appeal is not moot.  We conclude neither has merit.

First, mother contends that her challenge to the dispositional order, standing alone, is sufficient to avoid mootness.  (See *D.P.*, *supra*, 14 Cal.5th at p. 283 [appeal is not moot where a jurisdictional finding " 'serves as the basis for dispositional orders that are also challenged on appeal' "].)

However, mother does not point to any tangible consequences from the dispositional order she seeks to challenge that " '*continue to* adversely affect' " her. (*Id*. at pp. 277–278, italics added.) She does not argue, and the record does not reflect, that she is still subject to the dispositional order she seeks to challenge. Hence, she does not identify any effective relief we can grant her by reversing the dispositional order.

Second, mother asserts that, if the appeal is dismissed, she could be held financially liable for reimbursement to the Agency for various costs under section 903.1. But mother does not actually argue that she *is* being held financially liable, only that "counties do, at times, attempt to recover costs from parents," and that the Agency has not waived its right to do so here. Without any indication that the Agency is actually seeking to hold mother financially liable in any way, we find such speculative harm insufficient to avoid mootness. (*D.P.*, *supra*, 14 Cal.5th at p. 278.) Accordingly, we conclude her appeal is moot.

## II. Discretionary Review

Mother further contends that, if we decide this appeal is moot, as we have done, we should nonetheless exercise our discretion to reach the merits of her appeal. (See *D.P.*, *supra*, 14 Cal.5th at p. 282 [courts may exercise their " 'inherent discretion' " to reach merits of a moot appeal].) For the reasons we discuss, we decline to do so.

A court's discretion to consider a moot appeal is generally exercised when a case presents an issue of broad public interest that is likely to recur, when there may be a recurrence of the controversy between the parties, or when a material question remains for the court's determination. (*D.P.*, *supra*, 14 Cal.5th at p. 282.) *D.P.* set forth a non-exhaustive list of factors for assessing whether to exercise discretionary review of a moot appeal in the

dependency context. (*Id.* at p. 286.) First, we may consider "whether the challenged jurisdiction finding 'could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings,' or ' "could have other consequences for [the appellant] beyond jurisdiction." ' " (*Id.* at p. 285 [citing as examples instances where jurisdictional findings influence the child protective agency's decision to file a new dependency petition or a juvenile court's actions in a subsequent dependency proceeding].) Second, we may consider "whether the jurisdictional finding is based on particularly pernicious or stigmatizing conduct." (*Id.* at pp. 285–286 ["The more egregious the findings against the parent, the greater the parent's interest in challenging such findings."].) Third, we may consider whether the case became moot due to prompt compliance by parents with their case plan. (*Id.* at p. 286 ["It would perversely incentivize noncompliance if mootness doctrine resulted in the availability of appeals from jurisdictional findings only for parents who are less compliant or for whom the court has issued additional orders."].)

As to the first factor, the possible future financial consequences identified by mother and discussed in section I, *ante*, are highly speculative. Mother has not identified any actual current or future effects stemming from the juvenile court's orders.

Second, although mother asserts being labeled "as an abusive or neglectful parent" as a result of the dependency proceedings carries harm, we conclude as to the second factor that the findings against mother were not based on *particularly* stigmatizing or pernicious conduct such that discretionary review is warranted. The jurisdictional findings challenged on appeal were that *father* engaged in physical violence toward mother while she was holding the child, thereby placing the child at risk of serious physical

8

harm, and that mother exposed the child to additional violence because she had previously been a victim of domestic violence while the child was present but did not call the police or take measures to protect herself or the child. While these findings are serious, and recognizing that all conduct in such matters necessarily involves conduct harmful to children and that our assessment of severity or perniciousness is a relative analysis, we do not consider them so egregious to merit review. (Cf. *D.P.*, *supra*, 14 Cal.5th at p. 286 [citing allegations of physical and sexual abuse as an example of such egregious or pernicious conduct].)

Finally, for the third factor, we consider whether the reason the appeal has been rendered moot weighs in favor of or against discretionary review. Where a case becomes moot because of "prompt compliance by parents with their case plan," discretionary review may be especially appropriate. (*D.P.*, *supra*, 14 Cal.5th at p. 286.) Mother asserts that this factor warrants our exercise of discretion to review this appeal. We recognize that mother's compliance with her case plan appears to have been the reason the dependency proceeding concluded during the pendency of this appeal, which weighs in favor of discretionary review. However, as mother acknowledges, "no single factor is necessarily dispositive of whether a court should exercise discretionary review of a moot appeal." (*Ibid.*) On balance, after considering all the relevant factors and the totality of the evidence in the record, we conclude discretionary review of mother's moot appeal is not warranted.[3]

---

[3] Mother requested oral argument. A party has the right to oral argument in any appeal " ' "considered on the merits and decided by a written opinion." ' " (*Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1254.) Because we dismiss the appeal without reaching the merits, the parties have no right to oral argument, and we conclude it is unnecessary given our dismissal of the appeal as moot. Therefore, we instruct the clerk of the court to vacate the August 13 oral argument date.

**DISPOSITION**

Mother's appeal is dismissed as moot.



Petrou, J.


WE CONCUR:


Fujisaki, Acting P. J.


Rodríguez, J.


A171930/*In re E.F.*